UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | EP-23-cv-00302-KC |
| § | |
| **POWUR, PBC INC dba POWUR,** a Delaware § | |
| Corporation § | |
| § | |
| **Defendant.** § | |

**MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST POWUR PBC, INC. DBA POWUR**

Plaintiff Brandon Callier ("Plaintiff" or "Callier") files this Motion for Partial Summary Judgment against Defendant POWUR, PBC INC ("POWUR")[1] for phone calls made directly by POWUR Agents, as follows:

### I. RULE 56(a) STATEMENT OF UNDISPUTED FACTS[2]

1.   Brandon Callier is the owner and regular user of the cellular phone 915-383-4604 ("4604") Number and has been since at least December 2007. App. at 2¶ 2. The 4604 Number is

---

[1] Callier has alleged calls from anonymous telemarketers in this case that made phone calls from phone numbers 862-362-5001 and 209-457-2342. Callier does not seek a determination on those phone calls. Callier brings this Motion for Summary Judgment ("Motion") solely for phone calls made directly by the POWUR Agents.

[2] In support of the relied upon facts of this Motion, Callier files an Appendix ("Appendix") containing declarations, phone records, discovery documents, and other documents. The Appendix is sequentially numbered. Thus a citation to documents contained in the Appendix will appear as follows: App. at _¶ _ (for declarations) or App. at _ (for other documents). In the Analysis portion of this Motion (*see* discussion infra at Section II.B.). in support, Callier will refer to these Undisputed Facts (and all information referenced and cited therein) and will cite to them as follows: SUF ¶ _.

a telephone number that is assigned to a cellular telephone service and has been since at least December 2007. *Id*

2.  Callier registered the 4604 Number on the national Do Not Call Registry ("DNC Registry") in December 2007. App at 2 ¶ 3. The 4604 Number has remained on the DNC Registry since it was registered in December 2007. *Id.*

3.  Callier is a residential telephone subscriber to the 4604 Number. App. at 2 ¶ 4. The 4604 Number is used by Callier for personal, family, and household use. *Id*. The 4604 Number is the primary way that Callier contacts friends and family. *Id*.

4.  Callier has not held the 4604 Number out to the public as a business number. App. 3 ¶ 5. Callier has not advertised the 4604 number as a business number. *Id*. The 4604 Number is not registered as a business line. *Id*. Callier pays the phone bill for the 4604 Number out of his personal funds. *Id*. The phone bill for the 4604 Number is not paid from a business account. *Id*.

5.  Callier received calls to the 4604 Number by POWUR representatives from at least eleven (11) different numbers: 732-575-2007, 480-431-7017, 210-781-1349, 208-602-9679, 856-505-9559, 631-680-1135, 410-977-8777, 210-952-8664, 530-613-8580, 513-888-0213, 937-418-7976. See App. at 3 ¶¶ 8-9, App. at 4 ¶ 13-15, App. at 5 ¶¶ 22, 26, App. at 6 ¶¶ 30-32, 35, 36.

6.  On May 11, 2013, Plaintiff received one phone call and a text message from Robert Hall ("Hall") using phone number 732-575-2007. App. at 3 ¶ 8, App. at 28, App. at 29, App. at 46, App. at 60.

7.  On May 12, 2023, Plaintiff received one phone call from Robert Hall from phone number 732-575-2007. App. at 3 ¶ 8, App. at 28, App. at 46.

2

8. On May 23, 2023, Plaintiff received three (3) phone calls from Jerrell Mixon ("Mixon") from phone number 480-431-7017.  App. at 3 ¶ 9, App. at 28, App. at 37.

9. On May 25, 2023, Plaintiff received two (2) phone calls from Jerrell Mixon ("Mixon") from phone number 480-431-7017.  App. at 3 ¶ 9, App. at 28, App. at 45

10. On May 28, 2023, Plaintiff sent an email to POWUR at email addresses customercare@powur.com and compliance@powur.com POWUR of the unwanted phone calls. App. at 3 ¶ 10, App at 9.

11. On June 21, 2023, Plaintiff received two phone calls from Genesis Segovia from phone number 210-781-1349.  App. at 4 ¶ 13, App. at 28, App. at 38, App. at 48.

12. On June 22, 2023, Plaintiff received two phone calls from Genesis Segovia ("Segovia") from phone number 210-781-1349.  App. at 4 ¶ 13, App. at 28, App. at 47, App. at 48.

13. On June 23, 2023, Plaintiff received one phone call from Genesis Segovia from phone number 210-781-1349. App. at 4 ¶ 13, App. at 28, App. at 47.

14. On July 29, 2023, Plaintiff received one phone call from Garrett Allred ("Allred") from phone number 208-602-9679. App. at 4 ¶ 14, App. at 28, App. at 348.

15. On August 1, 2023, Plaintiff received one phone call from Garrett Allred from phone number 208-602-9679. App. at 4 ¶ 14, App. at 28, App. at 39, App. at 59.

16. On August 7, 2023, Plaintiff received two phone calls from Garrett Allred from phone number 208-602-9679. App. at 4 ¶ 14, App. at 28, App. at 59.

17. On August 19, 2023, Plaintiff received three text messages from Derrick Grant ("Grant") from phone number 856-505-9559. App. at 4 ¶ 15, App. at 29, App. at 61.

18. On August 20, 2023, Plaintiff received two phone calls and one text message from

3

Derrick Grant from phone number 856-505-9559. App. at 4 ¶ 15, App. at 29, App. at 40, App. at 61.

19.     On August 20, 2023, Plaintiff emailed POWUR attorney James Carlson at jim@kr.law alerting Mr. Carlson and POWUR of continued unwanted solicitation phone calls. App. at 4 ¶ 16, App. at 24.

20.     On August 21, 2023, Carlson replied, "Thank you for sending the attachment and settlement offer.  I will relay this information to my client and get back to you" in response to the email in paragraph 19. App. at 4 ¶ 17, App. at 25.

21.     On August 21, 2023, Plaintiff received one phone call and one text message from Derrick Grant from phone number 856-505-9559. App at 4 ¶ 15. App. at 29, App at 61.

22.     On August 25, 2023, Plaintiff emailed Carlson alerting Carlson and POWUR of continued unwanted solicitation phone calls.  App. at 4 ¶ 18, App. at 10.

23.     On August 28, 2023, Plaintiff received an email from attorney James Carlson alerting Plaintiff that he had "relayed this information" in paragraph 22 to Defendant POWUR. App. at 5 ¶ 19, App. at 10.

24.     On August 26, 2023, Plaintiff received three phone calls and one text message from Derrick Grant from phone number 856-505-9559. App. at 5 ¶ 21, App. at 29, App. at 61.

25.     On August 28, 2023, Plaintiff received one phone call from Derrick Grant from phone number 856-505-9559. App. at 5 ¶ 21, App. at 29, App. at 61.

26.     On August 31, 2023, Plaintiff received one phone call and one text message from Derrick Grant from phone number 856-505-9559. App. at 5 ¶ 21, App. at 29, App. at 61

4

27. On September 7, 2023, Plaintiff received one phone call and two text messages from Edward Zajac ("Zajac") from phone number 631-680-1135. App. at 5 ¶ 22, App. at 29, App. at 41, App. at 62.

28. On September 8, 2023, Plaintiff received two phone calls from Edward Zajac from phone number 631-680-1135. App. at 5 ¶ 22, App. at 30, App. at 52.

29. On September 8, 2023. Plaintiff sent attorney Carlson another email alerting Carlson and POWUR of continued unwanted solicitation phone calls. App. at 5 ¶ 23, App at. 13-14.

30. On September 8, 2023, Carlson replied, "Thanks so much, this is exactly the information I needed" to Plaintiff's email in paragraph 29. App. at 5 ¶ 24, App. at 14.

31. On September 13, 2023, Plaintiff received a phone call from Derrick Grant from phone number 856-505-9559. App at 5 ¶ 25, App. at 30, App. at 51.

32. On September 13, 2023, Plaintiff received a phone call from Edward Zajac from phone number 631-680-1135. App at 5 ¶ 22, App. at 30, App. at 42, App. at 51.

33. On October 7, 2023, Plaintiff received two phone calls and a text message from Bobby Smith ("Smith") from phone number 407-977-8777. App at 5 ¶ 26, App. 30, App. at 50, App. at 70.

34. On October 11, 2023, Plaintiff received a phone call from Eric Garcia ("Garcia") from phone number 210-952-8664. App at 6 ¶ 30, App. at 30, App. at 43.

35. On October 11, 2023, Plaintiff sent attorney Carlson another email alerting Carlson and POWUR of continued unwanted solicitation phone calls. App. at 5 ¶ 27, App. at 19.

36. On October 13, 2023, Carlson replied, "Received, thank you for letting me know. I've spoken to my client about the information you provided" to the email in paragraph 35. App. at 6 ¶ 28, App. at 19-20.

37. On October 14, 2023, Plaintiff received two text messages from Eric Garcia from phone number 210-952-8664. App at 6 ¶ 31, App. at. 30, App. at 64.

38. On October 15, 2023, Plaintiff sent attorney Carlson an email that included a screenshot of text messages Plaintiff had received from POWUR Agent Eric Garcia, alerting Carlson and POWUR of continued unwanted solicitation calls/texts.  App. at 6 ¶ 32. App. at 20.

39. On October 16, 2023, Carlson replied, "Received, thank you.  As before, please let me know if you are contacted again" to the email in paragraph 38. App. at 6 ¶ 33, App. at 21.

40. On January 4, 2024, Plaintiff received a phone call and a text from Jamie Thompson ("Thompson") from phone number 530-613-8580. App. at 6 ¶ 34, App. at 30, App. at 65.

41. On January 9, 2024, Plaintiff sent Carlson, and other POWUR attorneys an email alerting POWUR of continued unwanted solicitation phone calls.  App. at 6 ¶ 35, App. at 23.

42. On January 24, 2024, Plaintiff received a phone call and a text message from Christopher Young ("Young") from phone number 513-888-0213. App at 6 ¶ 37, App. at 30, App. at 66, App. at 67.

43. On January 25, 2024, Plaintiff received a phone call from Christopher Young from phone number 513-888-0213. App at 6 ¶ 37, App. at 30, App. at 44, App. at 66.

44. On February 27, 2024, Plaintiff received a phone call and a text message from Marc Ross ("Ross") from phone number 937-418-7976. App at 6 ¶ 38, App. at 30, App. at 68-69.

45. On February 29, 2024, Plaintiff received a text message from Marc Ross from phone number 937-418-7976. App at 7 ¶ 39, App. at 31, App. at 68.

46. Exhibit A-2 to the Declaration of Callier is a true and correct copy of the call log prepared by Callier showing the calls and texts made directly by POWUR Agents to Callier. App. at 28-31.

6

47.     Each of the calls and texts from the POWUR Agents was an attempt to sell solar panel installation to Callier.  App. at 3 ¶ 7.

48.     POWUR did not produce in discovery in this litigation a "prior signed written consent. App. 72-91.

49.     Plaintiff continued to receive phone calls after he filed his First Amended Complaint and received phone calls from new POWUR agents Jamie Thompson, Christopher Young, and Marc Ross.  App at 5 ¶ 26, App at 6 ¶ 37, App. at 7 ¶ 39, App. at 30, App. at 31, App. at 44, App. at 50, App. at 66, App. at 70, App. at 68.

50.     POWUR supplied web pages for each of the POWUR Agents.  App. at 7, App. at 78-81, App. at 92-103.

51.     POWUR owned and controlled the POWUR Agents' web pages do not indicate the POWUR Agents are independent agents.  App. at 7, App. at 78-81, App. at 92-103.

52.     POWUR allowed the POWUR Agents to solicit using POWUR trademarks and logos. App. at 7, App. at 82, App. at 84, App. at 86, App. at 104-115.

53.     POWUR admitted in Discovery, Requests for Admissions, that Plaintiff emailed POWUR on May 28, 2023, and informed POWUR of unwanted solicitation phone calls.  App. at 7, App. at 87.

54.     POWUR admitted in Discovery, Requests for Admissions, that Plaintiff emailed POWUR on August 20, 2023, and informed POWUR of unwanted solicitation phone calls. App. at 7, App. at 87.

55.     POWUR admitted in Discovery, Requests for Admissions, that Plaintiff emailed POWUR on August 25, 2023, and informed POWUR of unwanted solicitation phone calls. App. at 7, App. at 87.

56.     Plaintiff's First Amended Complaint ("FAC") refers to Robert Hall, Jerrell Mixon, Genesis Segovia, Garrett Allred, Derrick Grant, Edward Zajac, Bobby Smith, and Eric Garcia as the "POWUR Sales Team."

57.     The POWUR Sales Team collectively with Jamie Thompson, Christopher Young, and Marc Ross, are collectively referred to as "POWUR Agents" in this Motion for Summary Judgment.

## II.   ARGUMENT AND AUTHORITIES

### A.   THE LAW

#### 1.   Legal Standard for Summary Judgment

"Summary judgment is proper where the pleadings, discovery, and affidavits demonstrate that there is 'no genuine dispute as to any material fact and movant is entitled to judgment as a matter of law.'" *Salaiz v. Am. Consumer Credit Counseling, Inc.*, No. EP-22-cv-00194-FM, 2022 WL 17752212, at *2 (W.D. Tex. Nov. 16, 2022)(quoting Fed. R. Civ. P. 56(a)).  "A dispute over a material fact is genuine 'when there is evidence sufficient for a rational trier fact to find for the non-moving party.'" *Id*. (quoting *Perez v. Region 20 Educ. Serv. Ctr*., 307 F.3d 318, 323 (5th Cir. 2002) (internal citation omitted)).  "Substantive law defines which facts are material." *Id.* (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)).

"The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits demonstrating the absence of a genuine issue of material fact." *Id*. (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  Once the moving party has met this initial burden, the nonmoving party must then go beyond the pleadings and, "by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial." *Id*. (citing *Celotex*, 477 U.S. at 324 (internal quotation marks and citation

omitted)). This Court elaborated on the burden of the non-moving party in order to defeat a summary judgment as follows:

> The nonmoving party's burden is not satisfied with "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." The court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." When reviewing that parties, submissions, the court does not "weigh the evidence or evaluate the credibility of witnesses." Once the nonmovant has had the opportunity to make this showing, summary judgment will be granted "if no reasonable juror could find for the nonmovant."

*Salaiz*, 2022 WL 17752212, at *2 (internal citations omitted).

### 2.   TCPA Law

Plaintiff makes one Complaint under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et set and 47 C.F.R. §64.1200(c) ("TCPA") against Defendant. Defendant violated the TCPA when it caused telephone solicitations to be placed to Plaintiff's residential phone registered with the national Do Not Call Registry (see 47 U.S.C. § 227(c); 47 C.F.R. §64.1200(c)(2)). *See* Plaintiff's First Amended Complaint ¶¶ 98-103.

#### a.   TCPA and the Do Not Call Registry

The DNC Registry allows consumers to register their telephone numbers and thereby state their desire to not receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is canceled by the consumer or the telephone number is removed by the database administrator." *Id*. The TCPA and its implementing regulations prohibit the initiation of "telephone solicitations" to residential telephone subscribers to the DNC Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); *Hunsinger v Dynata LLC*, No. 3:22-CV-00136-G-BT, 2023 WL 2377481, at *5 (N.D. Tex. Feb. 7, 2023), *report and recommendation adopted*, No. 3:22-CV-0136-G-BT, 2023 WL 2386710 (N.D. Tex. Mar. 4, 2023). *See also Callier v Am. Amicable Life Ins. Co. of Texas,* No. EP-22-CV-

00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022).

The term "telephone solicitation" in the TCPA means "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental or, or investment in, property, goods, or services, which is transmitted to any person…." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15).  However, such term does not include a call or message: "(i) To any person with that person's prior express invitation or permission; (ii) To any person with whom the caller has an established business relationship; or (iii) By or on behalf of a tax-exempt nonprofit organization." *Id*. Thus, the regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller.  47 C.F.R. § 64.1200(c)(2)(ii). That agreement must also include the telephone number to which the calls may be placed.  *Id.*

Further, the regulations exempt from liability a caller who has an established business relationship with the residential subscriber called, a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity…." 47 C.F.R. § 64.1200(f)(15); 47 C.F.R. § 64.1200(f)(5). *See also, Morris v. Copart*, No. 4:15-CV-724, 2016 WL 6608874, at *9 (E.D. Tex. Nov. 9, 2016).  However, the subscriber's "do-not-call request" . . . terminates an established business relationship for the purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller." 47 C.F.R. § 64.1200(f)(5)(i).

**B.   Analysis**

    **1.   TCPA and DNC Registry Violations;**

        **a. POWUR violated the TCPA with calls and texts up to and including the call on March 25, 2023, at 5:21 p.m. to Callier's residential telephone (the 4604**

10

**Number).**

The TCPA prohibits the initiation of "telephone solicitations" to residential telephone subscribers to the DNC Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2). The term "telephone solicitation" in the TCPA means the "initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, on investment in, property, goods, or services, which is transmitted to any person…." 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Callier is the owner and regular user of the number 915-383-4604 (the 4604 Number) and has been since at least December 2007. SUF ¶ 1. The 4604 Number is a telephone number that is assigned to a cellular telephone service and has been since at least December 2007. *Id.* Callier registered the 4604 Number on the DNC Registry in December 2007. *Id.* The 4604 Number has remained on the DNC Registry since it was registered in December 2007. *Id.*

Callier is the residential telephone subscriber to the 4604 Number. SUF ¶ 3. The 4604 Number is used by Callier for personal, family, and household use. *Id.* The 4604 Number is the primary way that Callier contacts friends and family. *Id.* Callier has not held the 4604 Number out to the public as a business number and has not advertised the 4604 Number as a business number. SUF ¶ 4. The 4604 Number is not registered as a business line. *Id.* Callier pays for the bill for the 4604 Number out of his personal funds. *Id.* The phone bill for the 4604 Number is not paid from a business account. *Id.*

On May 2, 2023, Plaintiff received the first of at least 90 phone calls from a telemarketer using phone number 862-362-5001 to solicit solar panels. FAC ¶¶ 26, 67. Despite Callier giving multiple do-not-call requests to the telemarketer, the phone calls continued. This telemarketer direct transferred Callier to more than ten (10) POWUR Agents as a result of solicitation phone calls. On May 11, 2023, Plaintiff received a phone call and a text message from Robert Hall

soliciting solar panels on behalf of Defendant POWUR. SUF ¶ 6. On May 12, 2023, Plaintiff received another phone call from Robert Hall soliciting Plaintiff for solar panels. SUF ¶ 7.

On May 23, 2023, Plaintiff received three (3) phone calls from Jerrell Mixon soliciting solar panels on behalf of Defendant. SUF ¶ 8. On May 25, 2023, Plaintiff received two (2) additional phone calls from Jerrell Mixon soliciting solar panels on behalf of Defendant. SUF ¶ 9.

Each of the calls and texts from the POWUR Agents Hall and Mixon described above was an attempt to induce Plaintiff into purchasing solar panels. SUF ¶ 47. Therefore, unless Defendant can show that Callier gave his express written consent for these calls/texts, or that he had an established business relationship with Defendant when the eight calls/texts between May 11, 2023, and May 25, 2023, were made, Defendant is liable to Callier for the first eight calls/texts of May 11, 2023, to May 25, 2023, made to his residential line for a telephone solicitation.

> i. *POWUR did not have prior signed written consent to make telephone solicitations to Callier*

The term "telephone solicitation" under the TCPA does not include calls "[t]o any person with that person's prior express invitation or permission." See 47 U.S.C. § 227(a)(4); 47 C.F.R. § 64.1200(f)(15). Such express invitation or permission must be in writing. See 47 C.F.R. § 64.1200(c)(2)(ii). Specifically, the regulations exempt from liability a caller who has obtained the subscriber's signed, written agreement to receive telephone solicitations from the caller. *Id*.

POWUR did not produce in discovery in this litigation a "prior signed written consent" executed by Callier authorizing POWUR to make telephone solicitations to the 4604 Number, or any telephone number. SUF ¶. POWUR had not alleged it has a prior signed written consent executed by Callier authorizing POWUR to make telephone solicitation to the 4604 Number. *Id*.

> ii. *POWUR did not have an established business relationship with Callier at*

12

*the time all calls/texts leading up to and including the May 25, 2023, 5:21 PM calls/texts were made*.

The regulations exempt from liability a caller who has an established business relationship with the residential subscriber called, *i.e.* a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity…." 47 C.F.R. § 64.1200(f)(15)(ii); 47 C.F.R. § 64.1200(f)(5). The evidence shows that prior to May 11, 2023, Callier had had no dealings with POWUR. SUF ¶ 48. Prior to May 11, 2023, Callier did not request solar panels or any products from Defendant POWUR. *Id*.

Because Defendant cannot show that Callier gave his consent for these eight calls/texts, or that Callier had an established business relationship with Defendant when the eight calls/texts at issue were made, Defendant is liable to Callier for these first eight calls/texts of May 11, 2023, to May 25, 2023, made to his residential line for a telephone solicitation.

### b. POWUR knowingly and willfully violated the TCPA with all calls and texts after May 28, 2023.

As previously stated, the regulations exempt from liability a caller who has an established Business relationship with the residential subscriber called, a "prior or existing relationship formed by a voluntary two-way communication between a person or entity and a residential subscriber with or without an exchange of consideration, on the basis of the subscriber's purchase or transaction with the entity…." 47 C.F.R. § 64.1200(f)(15)(ii); 47 C.F.R. § 64.1200(f)(5). Callier delivered multiple DNC requests to the anonymous telemarketer who was calling Plaintiff from phone number 862-562-8001. Plaintiff allowed the anonymous telemarketer to transfer Plaintiff to Robert Hall and Jerrell Mixon in an attempt to discover what company the anonymous telemarketer was making calls on behalf of. Defendant may argue that the calls established a

business relationship between Plaintiff and Defendant.  However, Plaintiff had delivered multiple DNC requests to the telemarketer who was calling on behalf of Defendant and setting appointments for POWUR Agents Hall and Mixon.  However, the law is clear that a subscriber's "do-not-call request…terminates an established business relationship for the purposes of telemarketing and telephone solicitation **even if the subscriber continues to do business with the seller**." 47 C.F.R. § 64.1200(f)(5)(i) (emphasis added).  Therefore, even if Plaintiff had established a business relationship (which he had not), once Callier sent Defendant an email on May 28, 2023, alerting Defendant of the unwanted phone calls, the established business relationship for the purposes of telephone solicitations was TERMINATED.  47 C.F.R. § 64.1200(f)(5)(i).  SUF ¶ ¶ 10, 53.

Because Defendant cannot show that Callier gave his consent for any calls after May 28, 2023, or that Callier had an established business relationship with Defendant when the calls/texts after May 28, 2023, were made to his residential line for a telephone solicitation.  Defendant is liable to Callier for these 46 calls/texts to his residential line for a telephone solicitation.  *See* SUF ¶¶ 10, 53, 54, 55.

Defendant POWUR's Agents continued to place phone calls to Plaintiff after Plaintiff alerted Defendant of the unwanted solicitation phone calls on May 28, 2023.  Plaintiff contacted Defendant's attorney via email on multiple occasions to make Defendant aware of continued unwanted solicitation phone calls: August 20, 2023, August 25, 2023, September 8, 2023, October 11, 2023, and January 9, 2024.  SUF ¶¶ 19-20, 22-23, 29-30, 35-36, 41, 53-55.  Defendant's attorney acknowledged receipt of each of these emails about continued unwanted phone calls.  SUF ¶¶ 20, 23, 30, 36.

Because Defendant was on notice Plaintiff did not want or consent to these calls, and had

14

months and multiple opportunities to comply with Plaintiff's desire to stop receiving phone calls, Defendant is liable for treble damages for each of the 46 calls/texts that were made to Plaintiff after May 28, 2023.  SUF ¶¶ 19-20, 22-23, 29-30, 35-36, 41, 53-55.

### c. POWUR is liable for phone calls made by POWUR Agents.

POWUR is liable for the solicitation calls/texts made directly by the POWUR agents. POWUR gave the POWUR Agents apparent, if not explicit, authority to make telephone solicitation calls on behalf of POWUR.  A reasonable consumer could not reasonably believe that the POWUR agents were independent contractors that were not under the control of POWUR.  To the contrary, POWUR exercised control over the manner and means in which POWUR Agents conducted their marketing efforts.

POWUR supplied each of the POWUR agents with web pages that began with "Powur.com," web pages that POWUR owned and controlled.  SUF ¶¶ 50-51.  These web pages include the name, phone number of the POWUR Agent, pictures of the POWUR Agent, the POWUR logo,  and POWUR trademarked images.  SUF ¶ 52. The POWUR websites and other marketing materials do not include the words "independent" or "independent agent." SUF ¶ 51.

POWUR gave the authorized POWUR Agents permission to market POWUR products and services using POWUR software, hardware, logos, trademarks, and proprietary information. POWUR exercised control over their POWUR Agents by owning and controlling their use of POWUR software, hardware, website, logos, and trademarks.  POWUR allowed the POWER Agents to market POWUR products and services without requiring the use of the words "contractor" or "independent".  Indeed, POWUR admitted that the word independent does not appear on the web pages that POWUR supplied to the POWUR Agents.  SUF ¶¶ 51-52.  Nothing about the POWUR relationship with the POWUR Agents indicates the POWUR Agents were

operating independently.

### 2. Damages

#### a. $500 per TCPA Violation For Calls From May 11, 2023, to May 25, 2023.

Damages under the TCPA are set by statute. Thus, Plaintiff seeks statutory damages. The TCPA provides for a private right of action for violations of the TCPA's Do Not Call Registry provisions, and also allows for a person claiming a violation of such TCPA provisions to receive $500 in statutory damages for each violation. *See* 47 U.S.C. § 227(c)(5)(B). Plaintiff seeks and is entitled to $500 for each of the eight calls and texts made directly to him by POWUR agents from May 11, 2023, through May 25, 2023., a total of $4,000 in TCPA statutory damages for this portion of calls/texts.

#### b. $1,500 per TCPA Violation after May 28, 2023

Plaintiff seeks and is entitled to treble damages against POWUR for all calls/texts made after May 28, 2023, when Plaintiff made his initial "do not call" request. See 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); 47 U.S.C.(c)(5); This amount is comprised of $1,500.00 in statutory damages for each of 46 calls/texts made from POWUR Agents after May 25, 2023, when Callier made his "do not call" request to POWUR. These were willful violations of Section 227(c) of the TCPA. See 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); 47 U.S.C. § 227(c)(5).

The TCPA provides that if the Court finds that the Defendant willfully or knowingly violated the TCPA's Do Not Call Registry provisions, the Court may, at its discretion, increase the amount of the award to an amount equal to not more than three times the amount available ($500) under 47 U.S.C. § 227(c)(5)(B). See 47 U.S.C. § 227(c)(5). In this case, Plaintiff has established that each of the calls and texts made to him after May 25, 2023 (a total of 46

16

calls/texts) is a violation of the TCPA's DNC Registry provisions. See discussion *supra* at Section II.B.1.b. Further, Callier alerted POWUR of continued unwanted phone calls on August 20, 2023, August 25, 2023, September 8, 2023, October 11, 2023, and January 9, 2024, of the continuation of the unwanted phone calls and text messages. SUF ¶¶ 19-20, 22-23, 29-30, 35-36, 41, 53-55 While the TCPA does not define willful, the Communications Act of 1943, of which the TCPA is a part, defines willful as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision [], rule or regulation." 47 U.S.C. § 312(f)(1). Here POWUR called or texted Plaintiff 46 times after he informed POWUR he was receiving unwanted phone calls in violation of the TCPA. These were conscious and deliberate acts, and thus, under Section 312 of the Communications Act of 1943, were willful violations of the TCPA.

Indeed, courts when faced with this question, found willful violations of the TCPA DNC Registry provisions where the Plaintiff specifically told the caller to stop calling and the caller continued to do so. *See, e.g., Collins v Enver Solar Inc.*, No. SACV19-00146-JLS-KES, 2021 WL 4551174, at *5 (C.D. Cal. May 26, 2021)(awarding treble damages for five calls made after Plaintiff affirmatively requested that the defendants stop calling him); *Paul Sapan v. The Porter Group, LLC et. al.*, Case No. SACV 15-318-JLS (DFMx)(C.D. Cal. November 3, 2015)(awarding treble damages on a motion for default judgment for eight calls to a plaintiff's home after the plaintiff affirmatively requested that the defendants stop calling).

Accordingly, Plaintiff is entitled to the maximum of $1,500 for each of the 46 calls/texts made to him after May 28, 2023, under 47 U.S.C. § 227(c)(5) (three times the $500 provided for in 47 U.S.C. § 227(c)(5)(B)). The total amount of TCPA willful statutory damages is $69,000.00.

### III. CONCLUSION

Callier respectfully requests that judgment for the amounts requested above be granted in his favor against POWUR PBC, INC. dba POWUR.

Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
1490A George Dieter Drive
#174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically through the Court's CM/ECF system and served on all parties to this case.

Respectfully submitted,

Brandon Callier
Plaintiff, Pro Se
1490A George Dieter Drive
#174
El Paso, TX 79936
915-383-4604
Callier74@gmail.com